IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                Criminal No. 3:17-cr-161

FRED MORTON,

   Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's MOTION TO SUPPRESS (ECF No. 16) all evidence and information seized during the execution of a search warrant at 1704 Mechanicsville Turnpike on October 6, 2017.[1] For the reasons discussed below, the motion will be denied.

**BACKGROUND**

On October 5, 2017, Officer Eric O'Brien ("O'Brien") of the Richmond Police Department presented to a state magistrate an affidavit for a search warrant[2] for the residence and curtilage

---

[1] It is unclear whether Defendant resided at that address or, if not, what his connection with that house was. This information affects whether Defendant has standing to seek suppression of the challenged evidence. See United States v. Gray, 491 F.3d 138, 144-46 (4th Cir. 2007) (outlining which persons may have reasonable expectation of privacy in house). The Court assumes for purposes of this memorandum that Defendant does have standing.

[2] In Virginia, this affidavit also constitutes an application for a search warrant. See Va. Code § 19.2-54.

of 1704 Mechanicsville Turnpike, Richmond, Virginia. Search Warrant (ECF No. 16-1) at 2.[3] The affidavit described in detail the location and appearance of the residence at that address, as well as the items to be searched for and seized.[4] Id. For the "material facts constituting probable cause that the search should be made," O'Brien attached a page that stated, in relevant part:

> On or about July and August of 2017, investigators observed heavy foot and vehicle traffic originating from 1704 Mechanicsville Tpke., in particular the rear alley area and the corner of the alley and Redwood Ave. which is just 2 lots away from 1704 Mechanicsville Tpke.
>
> On or about August 16th of 2017, [O'Brien] and investigators conducted a controlled purchase of suspected crack cocaine from a dealer in the immediate area of Redwood Ave. and Mechanicsville Tpke.
>
> On October 5, 2017, [O'Brien] conducted a "trash pull" at 1704 Mechanicsville Tpke in order to confirm or dispel if this address is involved in narcotics distribution. [O'Brien] went to the rear of this address and observed a green city of Richmond garbage can outside of the fence line of the address in the alley. This garbage was put

---

[3] The Search Warrant's pages are not numbered, so all page numbers herein refer to the numbers assigned automatically by ECF.

[4] Defendant does not contest that the corresponding descriptions in the warrant are constitutionally sufficient.

2

out for collection, and the city of Richmond lists Thursday as the collection day for this address. [O'Brien] retrieved from this garbage can one black garbage bag that had been tied off, hereafter referred to as Bag 1; and one open black garbage bag, hereafter referred to as Bag 2.

These items were secured in a separate empty garbage bag and transported to 1st Precinct. At 1st Precinct [O'Brien] sorted through the collected items.

From Bag 1 [O'Brien] collected 9 whole sandwich bags with white powder residue on them, 4 whole sandwich bags with no residue on them, 6 sandwich bags with the corners missing, and 3 ripped sandwich bags with knots in them. Also collected from Bag 1 was an empty carton of baking soda, a tied bag containing approximately 30 unmarked brown pills [O'Brien] suspect[ed] to be some sort of vitamin (such as B12), and 1 document with the name "Latesha Eberhardt" written on it.

From Bag 2, [O'Brien] collected 2 whole sandwich bags with white residue, 7 whole sandwich bags with no residue, and 1 sandwich bag with the corner ripped off. Also collected from Bag 2 was 1 one dollar bill and a google maps document giving directions, with a starting address of 1704 Mechanicsville Tpke.

In one of the whole sandwich bags with residue from Bag 2 [O'Brien] observed some particles appearing to be an off white rock like substance. It was enough for a cocaine field test. [O'Brien] conducted a field test on the narcotics sample and it was positive for the presence of cocaine.

Id. at 5. A separate attachment also stated that, based on three years of experience in narcotics investigations, O'Brien knew that individuals trafficking narcotics often keep records of controlled substance purchases and sales in their residences and "stash houses[s]," and keep receipts, money transfers, ledgers, firearms, and ammunition in their residences. Id. at 7.

After reviewing this information, the magistrate issued the warrant at 11:46 a.m. on October 5, 2017. Id. at 1. During the ensuing search of 1704 Mechanicsville Turnpike on October 6, the police seized an AK-47 firearm with ammunition, green plant material and a grinder, U.S. currency, several security cameras, digital scales, a Pyrex cup with white residue, and a container with a false bottom. Id. at 4; Criminal Complaint (ECF No. 1) ¶ 6. Defendant was arrested during the execution of the search and advised of his rights. He admitted that the seized property was his, including the AK-47, and that he deals drugs. Criminal Complaint ¶ 7. A subsequent review of Defendant's criminal history revealed that he has five previous felony convictions. Id. ¶ 8.

On December 5, 2017, Defendant was indicted on one count of possession of a firearm by a convicted felon. ECF No. 13 at 1.

After pleading not guilty at his arraignment, Defendant filed this motion on January 3, 2018. ECF. No. 16.

At the suppression hearing, after O'Brien reviewed a map of 1704 Mechanicsville Turnpike and the surrounding neighborhood, he clarified that the controlled purchase referenced in the affidavit began at the intersection of the alley behind Mechanicsville Turnpike and Redwood Avenue, after which an individual went to 1616 Mechanicsville Turnpike to retrieve the narcotics being purchased before the transaction was finalized on Carver Street near the intersection with Mechanicsville Turnpike. O'Brien also stated that the area around Mechanicsville Turnpike and Redwood Avenue was a high-crime area. Finally, he said that he had searched the trashcan behind 1704 Mechanicsville Turnpike only after an individual stated, when being debriefed after his arrest, that there was suspicious narcotics activity at that address. The individual further stated that Defendant was involved in narcotics distribution, and that he had seen Defendant with a firearm inside 1704 Mechanicsville Turnpike. However, O'Brien confirmed that none of this new information revealed at the hearing was included in the warrant application.

## DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . ." **U.S. Const.** amend. IV. Except in limited circumstances not at issue here, a search of a house must be authorized by a search warrant issued on a showing of probable cause. United States v. DeQuasie, 373 F.3d 509, 518 (4th Cir. 2004). Probable cause exists where, looking at the totality of the circumstances, Maryland v. Pringle, 540 U.S. 366, 371 (2003), "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996); see also Illinois v. Gates, 462 U.S. 213, 232 (1983) (probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place"). This concept is a "fluid" one depending on the particular facts of a case, and is thus "not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Moreover, "a finding of probable cause does not require absolute certainty." United States v. Gary, 528 F.3d 324, 327 (4th Cir. 2008); see

6

also Taylor v. Farmer, 13 F.3d 117, 121 (4th Cir. 1993) (probable cause standard does not "require officials to possess an airtight case before taking action").

A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause de novo. Rather, the court must only ascertain whether "the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39 (internal quotations omitted); see also United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016). In doing so, courts should accord the magistrate's determination "great deference," and should not invalidate warrants by "interpreting [them] in a hypertechnical, rather than commonsensical, manner." Gates, 462 U.S. at 236 (internal quotations omitted). Where, as here, a defendant challenges the sufficiency of an affidavit underlying a search warrant, a reviewing court may look only at the information actually provided to the magistrate in the warrant application process. Lull, 824 F.3d at 119 n.3; see also Whiteley v. Warden, 401 U.S. 560, 565 n.8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate."). Reviewing courts "must

construe th[at] evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." Lull, 824 F.3d at 115 (internal quotations omitted).

As a general rule, the defendant who seeks to suppress evidence "bears the burden of showing that he had some interest which rendered his expectation of privacy legitimate." United States v. Dawson, 7 F. App'x 208, 209 (4th Cir. 2001) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove, by a preponderance of the evidence, that the challenged evidence is admissible. United States v. Seerden, 264 F. Supp. 3d 703, 708 (E.D. Va. 2017) (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Matlock, 415 U.S. 164, 178 (1974)).

Defendant moves to suppress the evidence seized at 1704 Mechanicsville Turnpike for two related reasons. First, he argues, O'Brien's affidavit did not establish probable cause for the search because it did not mention any attempts to make a controlled purchase directly from that address, rather than in its vicinity; it lacked information about foot traffic coming in and out of that address; and there were no indications that

8

police tried to determine if the items in the trashcan behind the house were placed there by its occupants or other people. Second, Defendant contends that the good faith exception to the exclusionary rule, set forth in United States v. Leon, 468 U.S. 897 (1984), does not apply here because O'Brien's affidavit so obviously lacked indicia of probable cause.

I. **Existence of Probable Cause**

The evidence does not indicate that the magistrate here lacked a substantial basis to find probable cause. The central assertion of Defendant's motion is that the information disclosed in the affidavit did not create a clear enough connection between the evidence of illegal drug activity observed by O'Brien and the Mechanicsville Turnpike address. As a result, there was only a possibility, not "a fair probability," Gates, 462 U.S. at 232, that contraband would be discovered there.

Defendant is correct that residential searches such as this one "have been upheld only where some information links the criminal activity to the defendant's residence." United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993). The affidavit contains several pieces of information that could possibly supply that link. In particular, the affidavit stated that, in

9

the months preceding the search, investigators had observed "heavy foot and vehicle traffic" coming from 1704 Mechanicsville Turnpike, especially the rear alley area, and had conducted a controlled purchase of suspected crack cocaine in the "immediate area" of Mechanicsville Turnpike and Redwood Avenue—which the affidavit specified was only two lots away from 1704 Mechanicsville Turnpike. In addition, O'Brien pulled items from a trashcan directly behind that address the day before the search. Among those items were sandwich bags with the corners removed, sandwich bags with white powder residue that O'Brien's subsequent field test revealed to be cocaine, and printed directions from Google maps with a starting address of 1704 Mechanicsville Turnpike.[5] Search Warrant at 5.

Defendant contends that even if that information shows some nexus, that connection is not strong enough because the magistrate had no information that foot traffic or drug purchases were observed at the Mechanicsville Turnpike address itself. This assertion is partially incorrect; the affidavit

---

[5] Although O'Brien's testimony about the presence of 1704 Mechanicsville Turnpike in a high-crime area and Defendant's connection to narcotics distribution would undoubtedly have helped establish a nexus, that information cannot be considered here because it was not disclosed to the magistrate. See Whiteley, 401 U.S. at 565 n.8; Lull, 824 F.3d at 119 n.3.

used the phrase "foot and vehicle traffic <u>originating</u> from 1704 Mechanicsville Turnpike," Search Warrant at 5 (emphasis added), which is not meaningfully different from Defendant's phrasing of "foot traffic coming <u>in and out</u> of" that address, Def. Mot. at 2 (emphasis added). But, even if the previous traffic could have supported a probable cause finding, that activity only occurred from July to August 2017. A search warrant "may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" <u>United States v. McCall</u>, 740 F.2d 1331, 1335-36 (4th Cir. 1984) (quoting <u>Sgro v. United States</u>, 287 U.S. 206, 210-11 (1932)). O'Brien's affidavit contained no information that the narcotics distribution at 1704 Mechanicsville Turnpike was ongoing in nature or that evidence of such distribution would be likely to remain at that address, and no "external indicia" supported the use of two- to three-month old evidence to establish probable cause for the October 6 search. See <u>United States v. Brown</u>, 958 F.2d 369, 1992 WL 46838, at *4 (4th Cir. Feb. 12, 1992) (citing <u>McCall</u>, 740 F.2d at 1337). Therefore, this evidence could not have influenced the magistrate's probable cause finding because that information was stale.

11

The affidavit's reference to the controlled purchase on August 16 is similarly insufficient. In <u>Lalor</u>, the Fourth Circuit found no probable cause in part because the affidavit underlying the warrant did not "explain the geographic relationship between the area where . . . drug sales occurred" and the address to be searched. 996 F.2d at 1582-83. Here, O'Brien's affidavit noted that the controlled purchase took place in the "immediate area" of Mechanicsville Turnpike and Redwood Avenue. Search Warrant at 5. Yet his testimony at the suppression hearing established that the connection between the purchase and 1704 Mechanicsville Turnpike was practically nonexistent, as the transaction did not begin or end at that address and an individual retrieved narcotics from 1616 Mechanicsville Turnpike, an entirely different location. Seen in this light, the affidavit's explanation of the relationship between the purchase and 1704 Mechanicsville Turnpike was inadequate. See <u>Lalor</u>, 996 F.2d at 1583. And, as with the foot and vehicle traffic, the purchase preceded the search by nearly two months, diminishing the present value of that evidence at the time of the search. Consequently, the magistrate could not have relied on that purchase in making her probable cause determination.

The yield from the trashcan pull, however, is enough to show the required nexus. Defendant's suggestion of the mere possibility that the two bags searched by O'Brien were put in the trashcan by somebody other than the residents of 1704 Mechanicsville Turnpike is immaterial. Indeed, the Fourth Circuit has rejected that exact argument in extremely similar circumstances. In Gary, this Court had found probable cause satisfied where, investigating a tip from an unnamed informant about illegal narcotics sales at defendant's residence, an officer removed several trash bags with plastic bags containing white powder residue from two trashcans directly behind the house.[6] See 528 F.3d at 326. The trash bags also contained a document addressed to another individual at that address. Id. One of the trashcans was marked with the number corresponding to defendant's residence, but the other was not. Id. On appeal, defendant argued that the magistrate had failed to consider the possibility "that another person placed the offending bags in

---

[6] The Court found that the affidavit failed to establish a substantial basis for probable cause only because it incorrectly stated that the trash can search had occurred a year earlier, making that information stale. See Gary, 528 F.3d at 328. The Court's discussion of probable cause was based on the assumption that the officer searching the trash and the magistrate signing the warrant believed that the date was accurate. See id. Because O'Brien's affidavit contains no typographical errors, Gary's probable cause analysis can be applied here.

13

the trash cans, or that some other person moved the unmarked can from its correct spot behind someone else's home to a place behind [defendant]'s home." Id. at 327. The Fourth Circuit, however, affirmed the Court's finding of probable cause, explaining that,

> [w]hile it is possible that the trash in the cans behind [defendant's residence] was not generated by [defendant], that mere possibility does not defeat probable cause. The most likely scenario is simply this: Trash cans placed directly behind a home are used by those who live there. Trash inside those trash cans, particularly if contained in trash bags, is usually generated by the house closest to those cans.

Id.

The same is true here. Defendant has identified a possibility that someone else may have put bags with evidence of drug activity in the trashcans behind 1704 Mechanicsville Turnpike. Nonetheless, under Gary, that possibility is not enough to suppress evidence because probable cause does not require "absolute certainty." 528 F.3d at 327; see also Taylor, 13 F.3d at 121 ("airtight case" not needed). To the contrary, the physical location of those trashcans immediately "outside of the fence line of th[at] address in the alley" is enough to make evidence recovered from those trashcans relevant to the

magistrate's probable cause determination. Search Warrant at 5. This conclusion does not change even though the trashcan that O'Brien searched may have been unmarked,[7] since the Fourth Circuit found that distinction immaterial for the same reasons discussed above. See Gary, 528 F.3d at 327-28 ("We acknowledge that it is possible that the unmarked can belonged to another address. Given that the can was found behind [the address searched], however, that possibility is too slight to defeat probable cause." (emphasis in original)). Moreover, as in Gary, the magistrate could also base her probable cause finding on the directions in the trashcan that had 1704 Mechanicsville Turnpike as the starting address, because that document "established that the garbage came from the correct address." Id. at 328.

Based on the trashcan pull alone, then, there was a "sufficient factual nexus between the evidence of drug trafficking found in the trashcan and the residence" at 1704 Mechanicsville Turnpike to allow the magistrate to infer that contraband or evidence of drug trafficking would be found there. United States v. Gary, 420 F. Supp. 2d 470, 478 (E.D. Va. 2006).

---

[7] The affidavit does not state whether the trashcan was marked with the number "1704" or unmarked. Whatever the case, given the absence of any relevant information, the magistrate could not have relied on the trashcan's markings in her probable cause determination.

15

Accordingly, the information in O'Brien's affidavit gave the magistrate a "substantial basis" to conclude that probable cause existed, Gates, 462 U.S. at 238, and Defendant's motion to suppress can be denied on that basis.

II. **Application of Good Faith Exception**

Even if O'Brien's affidavit was insufficient to establish probable cause, the good faith exception precludes exclusion of the evidence seized from the Mechanicsville Turnpike address. The exclusionary rule is a judicially-created "deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." Davis v. United States, 564 U.S. 229, 231-32 (2011). However, "under Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting Leon, 468 U.S. at 922). The relevant question here is whether, given all the circumstances, "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 923. At the same time, Leon also recognized

four situations in which an officer's reliance could not be considered "objectively reasonable":

> (1) where the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) where the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) where the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) where the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Williams, 548 F.3d 311, 317-18 (4th Cir. 2008) (citing Leon, 468 U.S. at 923). Defendant argues that the third exception applies here.

O'Brien's affidavit was not so lacking in indicia of probable cause that the items seized during the Mechanicsville Turnpike search should be suppressed. As detailed above, evidence from the trashcan search plainly supported the magistrate's determination that there was probable cause justifying a search warrant. Whether probable cause existed is thus not a close enough issue to demand consideration of the separate question of whether there were "merely sufficient

17

indicia of probable cause to justify application of the Leon good faith exception." Id. at 319.

Furthermore, even assuming the affidavit failed to provide a sufficient nexus between the evidence and the Mechanicsville Turnpike address, the absence of probable cause was not so obvious as would preclude reasonable reliance on the warrant. Even in Lalor—where an affidavit did not show a nexus sufficient to establish probable cause because it contained no statements about the likelihood of discovering evidence at the target address or about the geographic relationship between the address and previous drug sales—the third Leon exception did not apply because both the magistrate and the district court had found probable cause based on the affidavit. See 996 F.2d at 1583; see also United States v. Moore, 477 F. App'x 102, 106 (4th Cir. 2012) (indicia of probable cause not lacking because "[Defendant]'s possession of a large amount of cocaine in close proximity to his residence, combined with [officer]'s stated experience that drug traffickers tend to keep contraband and other evidence of drug transactions in a secure place to which they retain ready access, established a plausible nexus between the place to be searched and the presence of contraband items related to the distribution of narcotics"). In this case,

O'Brien stated his experience that drug traffickers keep contraband and related evidence in their residences and stash houses. He also identified several pieces of information that would have led a reasonable officer to believe that there was probable cause to search 1704 Mechanicsville Turnpike: specifically, heavy foot and vehicle traffic from the house, a controlled drug purchase nearby, and evidence of crack cocaine distribution in trashcans directly behind the house. Consequently, even if probable cause is lacking, the good faith exception prevents the application of the exclusionary rule here.

## CONCLUSION

For the foregoing reasons, Defendant's MOTION TO SUPPRESS (ECF No. 16) will be denied.

It is so ORDERED.

/s/ _____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 2, 2018