IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

**v.**  Criminal No. **3:17CR161**

**FRED L. MORTON, III,**

Petitioner.

**MEMORANDUM OPINION**

Fred L. Morton, III, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. ("§ 2255 Motion," ECF No. 62.) Morton contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One | Following the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Morton's "conviction and sentence for being a felon in possession of a firearm are no longer valid and should be vacated." (ECF No. 62, at 4.) |

The Government filed a response in which it argues that Claim One is procedurally defaulted. (ECF No. 66.) Morton has replied. (ECF Nos. 69, 70.) Claim One is procedurally defaulted and will be DISMISSED. The § 2255 Motion (ECF No. 62) will be DENIED.

**I. PROCEDURAL HISTORY**

On December 5, 2017, a grand jury indicted Morton for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) ("Count One"). (ECF No. 13, at 1–2.)

On January 3, 2018, Morton filed a Motion to Suppress (ECF No. 13), in which he challenged the search warrant that was used to obtain evidence against him. (*Id.* at 1–6.) On January 25, 2018, after hearing arguments from the parties, the Court denied Morton's Motion to

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling, and omits any emphasis or symbols in quotations from the parties' submissions and the record.

Suppress. (*See* ECF Nos. 28, 29; *see also* ECF Nos. 35, 36.) At that time, Morton indicated his intention to go forward with trial. (ECF No. 28, at 1.)

However, on February 15, 2018, Morton and the Government entered into a conditional Plea Agreement, (ECF No. 39), and Statement of Facts, (ECF No. 40). Morton stipulated that had the matter gone to trial, the Government would have proven the following facts, which he admitted were "true and correct," beyond a reasonable doubt:

> On October 6, 2017, Richmond Police, ATF, and DEA executed a state search warrant at 1704 Mechanicsville Turnpike, Richmond, Virginia 23223, in light of evidence collected from the trash can in the alley behind the home. Specifically, law enforcement located two trash bags containing white residue, some of which tested positive for cocaine, plastic bags and plastic bag corners, and other indicia of drug trafficking.
> While executing the search warrant, law enforcement recovered from the house a measuring cup with white residue, two digital scales, a plastic bag with white residue, $3550.00 in US currency, a grinder, and 3 security cameras that were positioned outside the residence.
> Additionally, law enforcement located a Mercedes Benz (VA tags VRS–8327) parked in the rear of 1704 Mechanicsville turnpike. Inside of that vehicle they found a factory box of 9mm ammunition and a box of .40 caliber handgun ammunition. From the trunk of the vehicle, law enforcement recovered a Romarm Romak semiautomatic rifle (AK–47 style), serial number 11123899. This firearm was reported stolen from Henrico County.
> During an interview with law enforcement at the house, Defendant stated that everything in the house was his. Defendant also stated that the AK–47 was his and that he purchased it about a month prior because "the streets had been so crazy." Defendant stated that the rifle was in the house, and he recently moved it to the vehicle, and admitted that he deals drugs. Defendant told police that they "would have had a good one" if they had executed a search warrant at the house on the previous Sunday.
> Defendant's criminal history revealed that he has five prior felony convictions.

(ECF No. 40, at 1–2 (paragraph numbers omitted).) Morton reserved the right to "file an appeal with respect to the sole issue of whether law enforcement violated [his] Fourth Amendment[2] rights . . . as raised in his Motion to Suppress." (ECF No. 39, at 3–4.)

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

2

On that same day, February 15, 2018, Morton appeared before the Court for a plea hearing. (ECF No. 38.) Morton pled guilty to Count One. (*Id.* at 1.) The Court accepted Morton's guilty plea and set the matter for sentencing. (*Id.*)

The probation officer generated a Presentence Investigation Report ("PSR"). (ECF No. 45.) Morton received a two-point reduction for acceptance of responsibility. (*Id.* ¶¶ 11, 21.) The Government did not recommend, and Morton did not receive, a possible additional one-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) because Morton decided to plead guilty on the eve of trial.[3] (*See id.* ¶ 11; *see also* ECF No. 48, at 2.) Morton received a Total Offense Level of 22 and a Criminal History Category of V, which resulted in an advisory guidelines range of 77 months to 96 months of imprisonment. (ECF No. 45 ¶¶ 22, 95–96.) The Government filed a Motion for a Variance arguing that Morton should receive the maximum possible sentence of 120 months of incarceration. (ECF No. 48.)

On May 25, 2018, Morton appeared before the Court for sentencing. (ECF No. 49, at 1.) Neither party objected to the PSR. (*Id.*) After hearing arguments from the parties and a statement from Morton, (*see id.*), the Court sentenced Morton to 120 months of incarceration, (*see* ECF No. 51, at 2). Among other reasons, the Court granted the Government's

---

[3] The United States Sentencing Guidelines state, in relevant part, that:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(a)–(b).

request for a variance to "reflect the seriousness of the offense" and to "protect the public from further crimes of the defendant." (ECF No. 52, at 3.)

Morton appealed the denial of his Motion to Suppress. *See United States v. Morton*, 740 F. App'x 320, 321 (4th Cir. 2018). On October 24, 2018, the United States Court of Appeals for the Fourth Circuit affirmed "the denial of the motion to suppress and the criminal judgment." *Id.* at 321–22.

## II. ANALYSIS

In Claim One, Morton asserts that following the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his "conviction and sentence for being a felon in possession of a firearm are no longer valid and should be vacated." (ECF No. 62, at 4.) Morton has failed to demonstrate that he is entitled to relief under *Rehaif*.

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. A separate provision, 18 U.S.C. § 924(a)(2), states that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to ten years. In *Rehaif*, the Supreme Court determined that § 922(g) does not criminalize a defendant's "innocent mistake" and therefore, a conviction under § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful.[4] 139 S. Ct. at 2197. Thus, *Rehaif* held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and that he knew*

---

[4] The defendant in *Rehaif* was convicted of being an alien unlawfully in the United States in possession of a firearm. 139 S. Ct. at 2194. At trial, Rehaif objected to the jury instruction "that the 'United States is not required to prove' that Rehaif 'knew he was illegally or unlawfully in the United States'" at the time he possessed the firearm. *Id.* (citation omitted). The district court overruled the objection, and Rehaif was convicted. *Id.* The Court of Appeals affirmed the conviction. *Id.* at 2195. The Supreme Court reversed, holding that the evidence "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200 (emphasis added).[5]

As an initial matter, Morton contends that the Court committed a "structural" error by accepting his guilty plea where the Indictment did not allege that he knew that he was a felon, and he was not otherwise apprised of that element of Count One. (ECF No. 63, at 4.) This is simply incorrect. *See Greer v. United States*, 141 S. Ct. 2090, 2099–2100 (2021) (rejecting argument that *Rehaif* errors are "'structural' and require automatic vacatur in *every* case").[6]

In *Greer*, the Supreme Court considered whether "discrete defects in the criminal process– such as the omission of a single element from jury instructors or the omission of a required warning from a Rule 11 plea colloquy"–constituted structural error under *Rehaif*. *Id.* at 2099–2100. In concluding that they do not, the Supreme Court held that "*Rehaif* errors fit comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" *Id.* at 2100 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)); *see also United States v. Medley*, No. 18–4789, 2021 WL 8362326, at *1 (4th Cir. Oct. 6, 2021) (en banc) (reversing panel opinion "that *Rehaif* errors affecting appellant's indictment . . . violated his substantive rights" and concluding, based upon *Greer*, that "appellant is not entitled to plain-error relief for his unpreserved *Rehaif* claim"), *rev'g*, 972 F.3d 399 (4th Cir. 2020). Thus, it is clear that any *Rehaif*

---

[5] In *Rehaif*, the Supreme Court addressed "what it means for a defendant to know he has 'violate[d]' 922(g)." 139 S. Ct. 2195. The Supreme Court set forth four elements that make possession of a firearm or ammunition unlawful: "(1) a status element (in this case, [being a felon with a sentence of imprisonment of more than one year]); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." *Id.* at 2195–96. Only element (1) is at issue in the present case: whether Morton was aware that he had been convicted of a felony at the time he possessed the firearm.

[6] "Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." *Greer*, 141 S. Ct. at 2100. They are very rare, having only been found in a "very limited class of cases." *Id.* at 2099.

error related to the Indictment or the plea colloquy is not "structural," and does not compel the automatic vacatur of Morton's conviction or sentence.

Rather, because Morton could have raised, but failed to raise, his *Rehaif* claim on direct review, absent a showing of cause and prejudice or actual innocence, Claim One is barred from review here. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). In this instance, the Court need not determine whether Morton has shown cause for his default, because he clearly suffered no actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167 (1982).

In order to demonstrate prejudice, Morton must show "a reasonable probability that, but for [the alleged *Rehaif*] errors, he would have not pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Greer*, 141 S. Ct. at 2098. Morton does not argue that, but for the alleged *Rehaif* errors, he would have pleaded not guilty and insisted on proceeding to trial. Rather, he merely questions the sufficiency of the Indictment and his plea colloquy. For this reason alone, Morton has failed to meet his burden of establishing actual prejudice. *See Greer*, 141 S. Ct. at 2097–98, 2100.

To be clear, nowhere in his submissions does Morton allege that he was unaware of the fact that he was a felon. *Cf. id.* at 2100 ("In felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon."). To the contrary, the evidence shows that Morton knew of his felon status on the date in question.[7]

---

[7] As the Court inferred in *Rehaif*, the Government's duty to prove a defendant's knowledge of his status is hardly "burdensome," because "knowledge [of status] can be inferred from circumstantial evidence." 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). Indeed, "[d]emonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew." *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2807 (2021). As discussed herein, the Government could easily show that Morton knew his felon status on the date in question.

Prior to the present offense, Morton had been convicted on multiple occasions of multiple felonies at both the state and federal levels and had received multiple sentences exceeding one year. (*See* ECF No. 45 ¶¶ 32, 36, 43, 45, 48.) Most relevant here, in 2006, Morton was convicted in this Court of being a felon in possession of a firearm and was sentenced to 63 months of incarceration. (*Id.* ¶ 45.)

Based on the forgoing facts, Morton clearly knew he was a felon at the time that the events giving rise to Count One occurred. *See United States v. Caldwell*, 7 F.4th 191, 213 (4th Cir. 2021) (concluding that it is "virtually impossible to believe [petitioner] did not know he had been convicted of crimes punishable by" more than a year in prison when he "served sentences longer than a year"). Indeed, Morton's prior conviction in this Court for possession of a firearm by a felon is fatal to any assertion to the contrary.[8] Moreover, the record lacks any evidence suggesting that Morton would not have pled guilty if he had known that such proof was required.[9]

Simply put, had Morton proceeded to trial, he would have lost the benefits he obtained by pleading guilty and would have faced a higher advisory guidelines range. Accordingly, no reasonable defendant in Morton's position would have insisted on proceeding to trial.[10]

---

[8] As if that were not enough, the Government's also has body-worn camera footage in which Morton admits, "I'm a convicted felon," "I know what that gun will carry," and "I know . . . the feds probably gonna fuck with me, too." (*See* ECF No. 67, at 1.) While *Rehaif* does not require the Government to "also prove the defendant knew his or her status prohibited firearm ownership or possession," *see United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020), this sort of evidence is particularly damning because, among other things, it underscores Morton's flagrant disregard for the law, and it illustrates the certainty of his conviction.

[9] To the contrary, Morton received a two-point reduction for acceptance of responsibility that he would not have received if he proceeded to trial, which lowered his Total Offense Level from 24 to 22. (*See* ECF No. 45 ¶¶ 19, 21, 22.)

[10] The fact that Morton received the maximum sentence is wholly irrelevant to the analysis. Morton had no way of knowing what sentence the Court might impose at the time he made his decision to plead guilty, as the Court did not fashion its sentence until after hearing from the parties and considering all available evidence. Indeed, the PSR had not been completed at the time that

Therefore, Morton cannot show any actual prejudice. This same information also dispels any suggestion that Morton's actual innocence could excuse his default.[11] To the contrary, Morton's guilt is quite clear from the record. Accordingly, Claim One is procedurally defaulted and will be DISMISSED.

### III. CONCLUSION

The § 2255 Motion (ECF No. 62) will be DENIED. Claim One and the action will be DISMISSED. A certificate of appealability ("COA") will be DENIED.[12]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 25 January 2023
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

Morton pled guilty, thus, he could not even be sure what his guidelines range would be. What is clear, however, is the fact that, no matter what Morton did, the Government was going to ask for the maximum sentence, and they had ample support for such a request. For almost thirty years, Morton has demonstrated lawless behavior and flaunted authority. He possessed a high-capacity AK–47 style firearm to secure what appeared to be a very significant drug distribution operation that he ran out a residence where he permitted a child to live. Under these circumstances, Morton had only two plausible options. First, he could attempt to exclude the evidence of his guilt, which he did to no avail. Second, he could plead guilty and throw himself on the mercy of the Court. The fact that Morton was undeserving of such mercy in this instance does not change the fact that, strategically speaking, pleading guilty was his best and only option.

[11] Actual innocence means "factual innocence, not mere legal insufficiency of [a] conviction." *Bousley*, 523 U.S. at 623–24 (citation omitted); *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1992) (indicating that a petitioner must establish "actual factual innocence"). Here, Morton only challenges the legal sufficiency of Count One. He has failed to allege, much less demonstrate, his "actual factual innocence." *Mikalajunas*, 186 F.3d at 494.

[12] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Morton has not met this standard.